## Case No. 4,928a.

FORBES v. OVERBY et al.

[4 Hughes, 441.]

District Court, E. D. Virginia. Jan. 1881.

H. L. Lee, for complainant.
W. H. Mann and Thos. G. Watkins, for defendants.

HUGHES, District Judge. The bill here is brought by [P. A. Forbes] an assignee in bankruptcy of the late Robert Rash against Rash's heirs and distributees and administrator, charging fraud by Rash, and conspiracy in it by the defendants, and praying a discovery and full disclosure of all the facts of the alleged fraud. Rash, who was a citizen of Lunenburg county, Va., filed his petition on the bankruptcy side of this court in March, 1868; got his discharge in February, 1869; bought land in Kentucky with money charged to have been fraudulently concealed assets in bankruptcy, in December, 1870; and died in May, 1875. This bill was brought in May, 1880. Rash surrendered no assets in bankruptcy except a meagre outfit of clothing and house furniture worth $20; and certain choses in action thought then to be worthless, but which, several years subsequently, realized a net aggregate sum to the assignee in bankruptcy of probably $1,000. The principal debt proved against Rash was a bond on which he was surety for one Thomas Jefferson (who also became a bankrupt), the amount of which is $3,154.11 due 1st January, 1861, with interest, some portion of which has been paid. This bond is held by one

W. T. Blackwell, for whose benefit this suit is brought. Rash owed no individual debts. The bill charges that about a year before filing his petition in bankruptcy, Rash sold his farm in Lunenburg county, and other interests in real estate, for $4,600; and that he had the greater portion of this money in hand or under control, at the time of filing the petition; but that he did not enter it in his schedules in bankruptcy; that he swore falsely in his schedules; and that he fraudulently concealed and secreted this money. It charges that he was a money lender among his neighbors, and owed no debts of his own at the time of filing the petition. It charges that this bankrupt, in conspiracy with his family, and his present administrator, concealed and secreted his estate from the complainant and the said Blackwell, who had no knowledge of the disposition which he made of it "until within the past year," and that up to the present time they have been unable to obtain information as to Rash's disposition of large portions of the moneys received from the said sales. It charges that "within the past year" complainant and said Blackwell have been informed that soon after obtaining his discharge in bankruptcy the said Rash went to Kentucky with some $4,000 which he had concealed and secreted from his creditors in bankruptcy, and which he there invested in land; that he went there for that purpose and returned as soon as the land was purchased, and lived in Lunenburg county, Va., until his death, intestate. The bill charges that Robert Rash was old and paralyzed when he went into bankruptcy, and remained so until he died, aged about 70 years; and that he could not have earned any money after his bankruptcy. It charges that he could not have had money with which to make the Kentucky purchase except money concealed from his creditors in bankruptcy, and that the said purchase was made with money thus concealed. The bill calls upon the defendants J. W. Overby, administrator of Robert Rash, and the various members of his family which it names, to make full discovery of all facts connected with this purchase of land in Kentucky, and with the charges of the bill.

The answer of the defendants sets out the particulars of the purchase in Kentucky, giving date, amounts of purchase money, deed, and locality, and makes definite the facts which were unknown to the complainant and of which the bill called for a discovery. Since the hearing in November, affidavits have been filed showing receipts by Robert Rash of two sums of money in the year 1868, after the filing of his bill in bankruptcy in March of that year, one of them dated the 29th April, 1868, showing that one R. B. Brydie had on April 29th, 1868, paid him $400 on a bond for $1.000 due to Rash; the other dated the 21st day of July, 1868, showing that Rash had received $284.69, the balance due on a bond for $1.-060 from the said Brydie; neither of which bonds was scheduled in the bankruptcy papers filed and sworn to in March, 1868. There was also filed, a few days after the hearing in November of the motion to dissolve the injunction, a letter dated November 3rd, 1880, received by the assignee from counsel of the Rash's in Kentucky, indicating a variety of transactions of Robert Rash, deceased, and his children, which, if proved, were fraudulent, and which show that the answer of defendants in this cause is not full or true, but is evasive and false. As already indicated, there was a motion for an injunction to restrain all persons and parties having legal rights in the property in bankruptcy from interfering with or disposing of same; which was granted ex parte. The first hearing of the case was on motion to dissolve this injunction. In support of this motion to dissolve, the defendants maintain that the bill is insufficient in form and substance and ought to be dismissed—First, because of complainant's laches in bringing his suit: and, second, because it fails to set forth specifically what were the impediments to an earlier prosecution of the complainant's claim; how he came to be so long ignorant of his rights, and of the means used by the defendants to fraudulently keep complainant in ignorance; and how and when complainant first came to a knowledge of the matters charged in the bill. Defendants rely chiefly on the cases of Badger v. Badger, 2 Wall. [69 U. S.] 87, and Wood v. Carpenter, 101 U. S. 135, in support of their objections to the bill.

There have been a great variety of decisions by the courts on the question of the lapse of time which should bar such cases as this; and it is a general rule that each case must be governed by its own peculiar circumstances. In Badger v. Badger [supra] suit was not brought until 39 years after the qualification of the administrator, and 22 years after the youngest distributee came of age. Certainly the rules of evidence and of pleading in such a case can furnish no just precedent for the present one, where the concealment of the fraud charged continued until the defendants filed their answer to the discovery sought by the bill. The complainant charges the fraud in general terms because he had no particular knowledge of it; he alleges a discovery of the leading fact within the past year, but gives no date, nor the county in which the land charged to have been fraudulently purchased lies, because ignorant of both, and calls upon defendants to disclose the particulars. A court will not compel a complainant who is ignorant of the particulars of a fraud to set them out in a bill which, as to these particulars, is a bill calling for a disclosure of them. The case of Wood v. Carpenter [supra] is no authority for so vain and impossible a requirement. That case

was an action at law, and turned chiefly upon an Indiana statute which in terms barred all suits and actions for fraud after six years from its perpetration; but contains a provision that if fraud is concealed, then the suit or action must be commenced within six years from the time it was discovered. Hence it was necessary for the complainant's pleading to aver a particular time for the discovery, in order to be good on demurrer; and this the more as the case was an action at law and not a proceeding in equity. The bill here is, in its main features, a bill of discovery. It charges a fraud, the particulars of which are unknown to the complainant, and one even yet not fully developed. It charges that the defendants were in conspiracy with the bankrupt to perpetrate fraud. It gives all the particulars which are known to the complainant, alleges that the fraud was successfully concealed from them until within a year past, having gone to a remote state and laid out money there in land, and immediately returned to his home and remained there until his death; and upon the basis of this general knowledge, which is all that he has been able to discover, he calls upon the defendants to answer and to disclose the particular facts in connection with the Kentucky purchase. This being in its principal features a bill for discovery, I think it includes, in substance, all the requirements decided by the court in the case of Badger v. Badger [supra], the bill in which case was not a bill of discovery. It was certainly very widely distinguished in this respect from Wood v. Carpenter [supra], which was an action at law wherein all the facts were known, before suit was brought, by plaintiff, and ought to have been properly charged in the declaration. The case must proceed, with leave to complainant to amend after obtaining the discovery he seeks, and with leave to all parties to take testimony in Kentucky. There is so much of allegation in the arguments of counsel, and so little proof in the pleadings and evidence, that I prefer to continue the case for a rehearing upon such additional proofs as parties may choose to put in at the April term.

The foregoing is a true copy of the opinion of the court filed in the above cause January, 1881.

Teste: Henry Flegenheimer,
(Seal.) Clk. U. S.. Dist. Court,
Eastern Dist. of Va.